# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control
Board,

     Petitioner

    v.     : No. 91 C.D. 2018
          : Argued: November 15, 2018
Lazlo Beh,

     Respondent

Lazlo Beh, for
Philadelphia Legal Assistance,

     Petitioner

    v.     : No. 153 C.D. 2018
          : Argued: November 15, 2018
Pennsylvania Liquor Control Board,

     Respondent

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE WOJCIK     FILED: July 17, 2019

   In these cross-petitions for review, the Pennsylvania Liquor Control Board (PLCB) and Lazlo Beh (Requester) seek review of the Final Determination of the Office of Open Records (OOR) granting in part and denying in part Requester's appeal of the PLCB's partial denial of his request under the Right-to-

Know Law (RTKL)[1] for liquor license applications and renewals for various licensees submitted to the PLCB pursuant to the Liquor Code.[2] We affirm in part, and reverse in part.

On August 1, 2017, Requester requested the following records from the Open Records Officer (ORO) of the PLCB :

> [T]he names of all individuals, officers, and managers associated with each of the following License Names and LIDs, the dates of original application and, if applicable, renewal, for each, as well as copies of each such application and renewal request:
>
> 2074 E. Clearfield Street, Inc., LID 50412;
>
> Zheng Beer Distributor Inc., LID 54531;
>
> Linda's Beer Distributor Inc., LID 56061;
>
> C and H Beer Distributor Inc., LID 60267;
>
> Phin Inc., LID 61561;
>
> CSSO Distributors LLC, LID 69255;

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101 – 67.3104. Section 102 of the RTKL defines "public record" as "[a] record . . . of a Commonwealth . . . agency that: (1) is not exempt under Section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. §67.102. In turn, Section 102 defines "record," in pertinent part as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, . . . book, . . . information stored or maintained electronically and a data-processed or image-processed document.

*Id.*

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001.

L & C Clearfield Inc., LID 71013;

3V Beer Distributors Inc., LID 65791.

Reproduced Record (R.R.) at 1a.

After extending its time to respond, the PLCB granted the request in part and denied it in part.  The PLCB provided over 250 pages of documents, *see* R.R. at 213a-488a, but redacted the following information as exempt from disclosure:  (1) home, cellular, or personal telephone numbers; (2) home addresses; (3) personal email addresses; (4) sales tax numbers; (5) bank account numbers; (6) social security numbers; (7) personal financial information; (8) employee numbers; and/or (9) other confidential personal identification numbers.  *Id.* at 5a-6a.

On September 26, 2017, Requester appealed to OOR the PLCB's redaction of home addresses, length of residency information, and personal financial information from the records that were provided.  R.R. at 18a-20a.  Requester contested the redaction of home addresses and length of residency as exempt under Section 708(b)(1)(ii)[3] because "there has been no suggestion that providing the home addresses . . . "would be reasonably likely" to result in any physical harm or other risk to the personal security  of the individual's whose name [is] included in [P]LCB's response."  *Id.* at 19a.  Requester also contested the redaction of the names/addresses of investors/sources of funds, the amounts invested/contributed, the source from which the monies were received, the private and commercial lenders, and the amount of loans that were listed on the Individual Financial

---

[3] 65 P.S. §67.708(b)(1)(ii).  Section 708(b)(1)(ii) states, "[T]he following are exempt from access by a requester under this act: . . . (1)  A record, the disclosure of which: . . . (ii)  would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual."

Disclosure Affidavits, PLCB Form 1842 (IFDAs) submitted to the PLCB with the applications under Section 708(b)(6)(i)(A).[4] *Id.* at 19a-20a.[5]

The parties submitted position statements to OOR. The PLCB asserted, *inter alia*, that Requester was improperly attempting to modify his request on appeal to include home addresses because they were not specifically asked for in the initial request that was submitted. The PLCB also argued that the disclosure of home addresses and length of residency also violated the right to privacy guaranteed by Article 1, Section 1 of the Pennsylvania Constitution.[6] The PLCB further claimed

---

[4] 65 P.S. §67.708(b)(6)(i)(A). Section 708(b)(6)(i)(A) states, "the following are exempt from access by a requester under this act: . . . (6)(i) The following personal identification information: . . . (A) A record containing all or part of a person's . . . personal financial information[.]"

[5] OOR granted the requests of three interested parties to participate in the appeal pursuant to Section 1101(c) of the RTKL, 65 P.S. §67.1101(c).

[6] Pa. Const. art. I, §1. Article 1, Section 1 states:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

With respect to the privacy rights guaranteed by Article 1, Section 1, the Supreme Court has explained:

> One of the pursuits of happiness is privacy. The right of privacy is as much property of the individual as the land to which he holds title and the clothing he wears on his back. . . . .
>
> The greatest joy that can be experienced by mortal man is to feel himself master of his fate,—this in small as well as in big things. Of all the precious privileges and prerogatives in the crown of happiness which every American citizen has the right to wear, none

4

that the IFDAs were exempt from disclosure under Section 708(b)(17)(ii) of the RTKL because they related to the noncriminal investigation of a licensee's eligibility for a license or a permit.[7]

_____

> shines with greater luster and imparts more innate satisfaction and soulful contentment to the wearer than the golden, diamond-studded right to be let alone. Everything else in comparison is dross and sawdust.

*Commonwealth v. Murray*, 223 A.2d 102, 109-110 (Pa. 1966).

[7] In support, PLCB submitted an affidavit of the Director of its Bureau of Licensing (Bureau), Barbara Peifer, which states, in relevant part:

> 6. Persons or businesses seeking to obtain a license or permit from the PLCB must file or submit an application with the [Bureau].
>
> * * *
>
> 9. As part of its licensing function, the [Bureau] frequently conducts investigations when it receives applications for licenses, permits, extensions of permits, etc.
>
> * * *
>
> 11. The investigations conducted by the [Bureau] typically involve an initial field investigation and a secondary records review investigation.
>
> * * *
>
> 13. Secondary record reviews are conducted by employees from the [Bureau's] Licensing Evaluations Division and involve reviewing Investigator's Reports in conjunction with numerous other documents that have been filed by the applicant in order to determine whether all of the applicable requirements have been satisfied . . . . These documents often contain sensitive and confidential information of the applicant.
>
> * * *

5

On December 22, 2017, OOR issued a Final Determination granting Requester's appeal in part and denying it in part. R.R. at 149a-164a. Initially, OOR determined that Requester did not modify his request on appeal by seeking the home addresses or length of residency of the licensees. OOR noted that while the request did not specifically ask for this information, it sought copies of the applications and permit renewals, which contain this information. OOR also found that the PLCB did not present any evidence that Requester did not seek this information in his request or that he waived his right to challenge these redactions on appeal. *Id.* at 153a.

---

15. One of the documents that is collected from applicants during the [Bureau's] investigation process is [the IFDA].

16. The information collected on the [IFDA] is used by the [Bureau] during its investigation process to determine whether there are any prohibited interlocking business interests, under sections 411 or 443 of the Liquor Code, [Act of April 12, 1951, P.L. 90, *as amended*,] 47 P.S. §§4-411, 4-443, or unlawful pecuniary interests, under section 404 of the Liquor Code[, 47 P.S. §4-404,] or the PLCB's Regulations. The [Bureau] also reviews corporate records, funding, and bank statements. This information is collected and maintained solely as a result of and for the purpose of the PLCB's investigation into the applicant submitting such information.

17. With the exception of the dollar amount paid to obtain a license, the other financial information included on the [IFDA] is treated as confidential by the [Bureau].

18. The PLCB also collects home addresses, birthdates, and social security numbers of applicants and/or their officers or managers on various applications or other documents for purposes of investigating the reputation/backgrounds of those individuals. The [Bureau] and the PLCB treat home address information as confidential . . . .

R.R. at 48a-50a.

Next, OOR considered whether the disclosure of home addresses or length of residency would threaten personal security to be exempt under Section 708(b)(1)(ii).  To establish the exemption applies, the PLCB was required to show: (1) a "reasonable likelihood" of (2) a "substantial and demonstrable risk" to a person's security.  *Delaware County v. Schaefer*, 45 A.3d 1149 (Pa. Cmwlth. 2012). "More than mere conjecture is needed" to establish that the exemption applies.  *Lutz v. City of Philadelphia*, 6 A.3d 669, 676 (Pa. Cmwlth. 2010).  OOR found that neither the PLCB nor the interested third parties presented evidence in support of the argument that disclosure of the home addresses would threaten personal security so they did not meet their burden that the information is exempt under Section 708(b)(1)(ii).[8]  R.R. at 154a.

OOR also determined that the PLCB did not demonstrate that disclosure of home addresses or length of residency violates the right to privacy guaranteed under Article 1, Section 1.  In *Pennsylvania State Education Association v. Commonwealth*, 148 A.3d 142, 158 (Pa. 2016) (*PSEA*), the Supreme Court held that an agency must consider an individual's constitutional right to privacy before granting access to information in a record under the RTKL.  A balancing test is applied, "weighing the privacy interest and the extent to which [it] may be invaded against the public interest that would result from disclosure."  *Id.* at 154-55 (citations omitted).  The Court held that "'certain types of information,' including home addresses, by their very nature, implicate privacy concerns and require balancing." *Id.* at 156-57 (citation omitted).

---

[8] *See* Section 708(a)(1) of the RTKL, 65 P.S. §67.708(a)(1) ("The burden of proving that a record of a Commonwealth agency . . . is exempt from public access shall be on the Commonwealth agency . . . receiving a request by a preponderance of the evidence.").

7

In *Reese v. Pennsylvanians for Union Reform*, 173 A.3d 1143, 1150 (Pa. 2017), Pennsylvanians for Union Reform (PFUR) sought a list of employees from the State Treasurer including names, dates of birth, and voting residences. The State Treasurer asserted that the *PSEA* balancing test should be applied prior to disclosure while PFUR argued that the information was accessible under Section 614(c) of the Administrative Code of 1929 (Administrative Code),[9] which states that the requested information, with the exception of voting residence, "shall be public information." The Supreme Court held that the exemptions in the RTKL did not apply because Section 614 of the Administrative Code states that the information is public information and Section 306 of the RTKL, 65 P.S. §67.306, provides that "[n]othing in this act shall supersede the public or nonpublic nature of a record or document established in . . . State law . . . ." *Id.* at 1158-59. Nevertheless, the Supreme Court held that "the *PSEA* balancing test is applicable to all government disclosures of personal information, including those not mandated by the RTKL or another statute" as a matter of constitutional law. *Id.* at 1159.

OOR explained that, as in *Reese*, Section 473 of the Liquor Code provides that "[t]he names and addresses" of "[a]ny person having a pecuniary interest in the conduct of business on licensed premises" filed with the PLCB "shall be recorded by [the PLCB] and made available to the public as a public record." 47 P.S. §4-473. OOR also noted that Section 403 of the Liquor Code requires that "if the applicant is a natural person, his application must show that he . . . has been a resident of this Commonwealth for at least two years immediately preceding his application." 47 P.S. §4-403. The PLCB's Director stated that the PLCB collects applicants' home addresses "for purposes of investigating the

---

[9] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §234(c).

8

reputation/backgrounds of those individuals" and collects the residency information for the sole purpose of determining whether an applicant meets the statutory requirements. R.R. at 158a, 160a. Requester asserted the "obvious public interest" in reviewing the information upon which the PLCB grants licenses and renewals and determining whether it has fulfilled its statutory duty prior to awarding or renewing the licenses. *Id.* at 158a.

OOR concluded that "[w]ithout these addresses, the public would be prevented from scrutinizing the actions of [the PLCB] and restricted in its ability to hold [the PLCB] accountable for its decision(s) and that "[t]he powerful public interest in shedding light on [the PLCB]'s administration of the Liquor Code outweighs the privacy interest raised by [the PLCB] and intervenors." R.R. at 160a. OOR also concluded, "Because [the PLCB] has not demonstrated how the privacy interests in [the length of residency] outweighs the public's interest in ensuring that the applicants meet the residency requirements under the Liquor Code, the length of time the respective applicants were residents of Pennsylvania is subject to public access." *Id.*

Finally, OOR determined that, based on Director Peifer's affidavit, the PLCB had demonstrated that the IFDAs relate to its noncriminal investigations of applicants "pursuant to its legislatively granted fact-finding powers to determine whether the respective applicants meet the requirements of the Liquor Code and [the PLCB's] regulations . . . ." R.R. at 163a. As a result, OOR found that the PLCB properly determined that the IFDAs are exempt from disclosure under Section 708(b)(17)(ii) of the RTKL. *Id.* Based on the foregoing, OOR directed the PLCB to provide Requester with the previously redacted information relating to applicants'

home addresses and lengths of residency in Pennsylvania. The PLCB and Requester filed the instant cross-appeals of OOR's Final Determination.[10]

# I.

In its appeal, the PLCB first argues that OOR incorrectly applied the *PSEA* constitutional balancing test and erred in requiring the disclosure of home addresses and length of residency information of applicants and/or licensees. The PLCB claims that OOR erred in relying on Section 708(a) of the RTKL to place the burden of proving, by a preponderance of the evidence, that the right to privacy outweighs the public benefit of disclosure under the constitutional balancing test required by *PSEA* because under *PSEA* and *Reese*, the constitutional right to privacy in home addresses and other personal information exists independently of the RTKL and the presumptions and burdens of the RTKL do not apply. The PLCB contends, rather, that under the constitutional balancing test, the requester seeking protected information must demonstrate a significant public interest warranting the infringement of those privacy rights under *Reese*, 173 A.3d at 1159, and *PSEA*, 148 A.3d at 151-158. The PLCB submits that the requester must also show that there is no alternate reasonable method of lesser intrusiveness to accomplish the governmental purpose. *See, e.g.*, *Denoncourt v. State Ethics Commission*, 470 A.2d 945, 949 (Pa. 1983) (plurality) ("[The] government's intrusion into a person's private affairs is constitutionally justified when the government interest is significant and there is no alternate reasonable method of lesser intrusiveness to accomplish the governmental purpose.") (footnote omitted).

---

[10] For appeals from determinations made by the OOR involving Commonwealth agencies, our standard of review is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

In contrast, in his cross-appeal, Requester contends that the PLCB incorrectly argues that the burden is on the requester to demonstrate that the public interest outweighs the privacy interest. Section 708(a) of the RTKL places the burden on the agency to show exemption from disclosure and Section 473 of the Liquor Code makes the addresses of all license holders and those with a pecuniary interest a matter of public record. Further, the PLCB fails to establish that there is any meaningful privacy interest in the length of residency in Pennsylvania.

Requester further argues that, in this case, in ordering disclosure, OOR gave proper deference to the General Assembly's determination that there is a public benefit to disclosure as Section 473 of the Liquor Code declares that the information is a public record. Requester identified the public interests in disclosure of this information whereas none were advanced in the *PSEA* line of cases. Specifically, Requester contends that by its terms, Section 473 requires disclosure of the licensee's home address and not the licensed premises address as asserted by the PLCB, and that by "enacting [Section] 473 the legislature must have deemed it to be in the public's benefit to have access to information about those individuals that were entrusted to sell alcohol to the public," and that "in cases such as this, there may be a lesser privacy interest for individuals who have applied to distribute alcohol[.]" R.R. at 144a.[11] The use of "residence address" in Section 504(a)(1) does not compel

---

[11] As Requester explains:

> The issuance of alcohol-related licenses is clearly one of great public interest. Alcohol is highly regulated and is widely acknowledged to be both a source of public health concern and a source of private and public revenue. The public clearly benefits from having full and complete information about the individuals and business entities that have been granted permission to sell alcoholic beverages in the Commonwealth of Pennsylvania.

11

a different conclusion because examination of all sections of the Liquor Code show that "residence," "residence address," and "address" all refer to an applicant or individual and not the licensed premises. *See* Sections 436, 437, 504 of the Liquor Code, 47 P.S. §§4-436, 4-437, 5-504. As a result, Requester asserts, OOR properly

The public has a similar interest in whether and to what extent the PLCB fulfills its duty of ensuring that licenses are only granted to those individuals and business entities that meet the requirements of the law.

As the PLCB states in its objection to this appeal, among its duties are determining whether there are prohibited interlocking business interests and unlawful pecuniary interests before awarding licenses.

The public is impeded from reviewing the PLCB's performance in this regard if the PLCB is permitted to redact the very information that it uses, or that could be used, to make these determinations. In other words, the information sought under RTKL[,] and currently the subject of this appeal, is relevant to whether and to what extent the PLCB has fulfilled its duty prior to awarding such licenses, and thus it is to the public's benefit that the information be available under the RTKL.

\* \* \*

In this case, . . . there is an obvious public interest in allowing the public to observe the information upon which the PLCB bases its decisions to grant alcohol-related licenses. (And I would argue that all of the materials, including the redacted portions, provided by the PLCB in response to the RTKL request form the entirety of "Applications" sought in the original RTKL request.) This public interest should outweigh any privacy interest to which recipients of these licenses, and their investors, can reasonably expect to be entitled with regard to the information in dispute in this appeal.

R.R. at 89a-90a.

12

applied the *PSEA* balancing test and properly concluded that the public interest outweighs the privacy interest in the disclosure of a licensee's home address and length of residence.

Initially, we find that, pursuant to Section 708(a)(1) of the RTKL, OOR properly placed the burden on the PLCB to demonstrate that the requested addresses were not a public record subject to disclosure. As this Court has recently explained with respect to a similar provision relating to applications for medical marijuana grower/processor or dispensary permits submitted pursuant to Section 302(b) of the Medical Marijuana Act (Act)[12]:

> Records in an agency's possession are presumed public unless exempt under an exception in the RTKL, a privilege, or another law. Section 305(a) of the RTKL, 65 P.S. §67.305(a). Also, the RTKL does not supersede the public nature of a record established by statute or regulation. Section 306 of the RTKL, 65 P.S. §67.306.
>
> The Act expressly provides permit applications "are *public records* and subject to the [RTKL]." Section 302(b) of the Act, 35 P.S. §10231.302(b) (emphasis added). We agree with OOR that the phrase "subject to" renders the Applications public except when any RTKL exceptions or other exceptions apply. [OOR's jurisdiction to assess statutory and regulatory exemptions pursuant to Section 305(a)(3) of the RTKL, 65 P.S. §67.305(a)(3), is well-established. *Department of Labor and Industry v. Heltzel*, 90 A.3d 823, 834 (Pa. Cmwlth. 2014)].

*Mission Pennsylvania, LLC v. McKelvey*, ___ A.3d ___ (Pa. Cmwlth., Nos. 185 C.D. 2018, 186 C.D. 2018, 187 C.D. 2018, 188 C.D. 2018, 189 C.D. 2018, 190 C.D. 2018, filed June 4, 2019) (*Mission Pennsylvania, LLC*), slip op. at 15.

---

[12] Act of April 17, 2016. P.L. 84, 35 P.S. §10231.302(b).

13

In *Mission Pennsylvania, LLC*, in response to a claim for exemption from disclosure under Article 1, Section 1, "OOR determined that the street addresses may be redacted from the applications, but required disclosure of the cities, states, and zip codes of the residential addresses." Slip op. at 18. Accordingly, in that case, "residential addresses that reveal an individual's location [we]re not at issue," and this Court "only evaluat[ed] an individual's privacy right in the remainder of the residential address." *Id.*

We ultimately determined that "[t]he record does not contain support for a reasonable subjective belief that residential addresses would be protected from disclosure [because] the application instructions d[id] not list 'residential addresses' as confidential information . . . ." Slip op. at 18. We also noted that "none of the parties submitted evidence supporting a subjective expectation in the privacy of residential addresses submitted in a voluntary application process." *Id.* at 18-19. Accordingly, we concluded that "OOR struck an appropriate balance in permitting partial redaction of addresses," and "we discern[ed] no error by OOR in analyzing the right to privacy." *Id.* at 19.

Additionally, in *Governor's Office of Administration v. Campbell*, 202 A.3d 890 (Pa. Cmwlth. 2019) (*GOA*), the requester sought the full names, position/job titles, dates of birth, and counties of residence of all employees in the Governor's Office of Administration's (GOA) computerized database. GOA granted the request in part, directing the requester to a publicly accessible electronic database listing the names and job titles of Commonwealth employees, which includes salaries, compensation, and employing agency, subject to redaction under Section 708(b) of the RTKL. GOA denied the request in part, to the extent that it sought the employees' dates of birth and counties of residence.

14

On the requester's appeal to OOR, GOA submitted the affidavit of the Commonwealth's Acting Director for the Human Resources Service Center (HR Director), which stated that: where an employee lives is a unique piece of data in his or her confidential personnel file, the use of which is related exclusively to the Commonwealth's role as employer; the Commonwealth only uses the address information to discern the particular benefits to which an employee is entitled as the benefits packages, programs, and requirements vary from county to county; and that information as to the sub-units of government of an employee's address (e.g., municipality or township) were also saved to provide tax information to the appropriate taxing authority. The HR Director indicated that "Commonwealth human resource professionals consider demographic information about an employee to be confidential," and "the confidential nature of demographic information is a well-accepted best practice in the human resource industry" that "is memorialized as a Commonwealth policy in Management Directive 505.18, *Maintenance, Access, and Release of Employe Information*," limiting "access to confidential employee information . . . to those who need to use the information for job-related purposes, the employee or persons explicitly permitted by the employee." *Id.* at 895 (footnote omitted).

We also recognized the provisions of the Employment Records Law[13] "protecting employment records by creating an expectation that only those who have a legitimate need, or those explicitly authorized . . . will access the employee's records," and Section 731 of the Fiscal Code[14] that "treats information collected for

---

[13] Act of November 26, 1978, P.L. 1212, *as amended*, 43 P.S. §§1321-1324.

[14] Act of April 9, 1929, P.L. 343, *as amended*, added by the Act of June 6, 1939, 72 P.S. §731.

15

tax purposes as confidential [and] for official use only." *GOA*, 202 A.3d at 895. We also noted that the requester therein "provided no countervailing public interest in support of disclosure." *Id.*

Ultimately, we concluded:

> On balance, we perceive no public benefit or interest in disclosing the requested counties of residence of Commonwealth employees and Requester has asserted none. The RTKL was "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions . . . ." *Governor's Office of Administration v. Purcell*, 35 A.3d 811, 820 (Pa. Cmwlth. 2011). The requested disclosure of information about the counties of residence of Commonwealth employees is not closely related to the official duties of the Commonwealth employees, and does not provide insight into their official actions. Indeed, "[t]he disclosure of personal information such as home addresses, reveals little, if anything about the workings of government[.]" *PSEA*, 148 A.3d at 145 (quoting *Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development, Office of Open Records*, 981 A.2d 383, 386 (Pa. Cmwlth. 2009), *aff'd*, [2 A.3d 558 (Pa. 2010)]).

> In rejecting a similar request for the home addresses of public school employees, our Supreme Court stated:

> > [N]othing in the RTKL suggests that it was ever intended to be used as a tool to procure personal information about private citizens or, in the worst sense, to be a generator of mailing lists. Public agencies are not clearinghouses of "bulk" personal information otherwise protected by constitutional privacy rights.

> *PSEA*, 148 A.3d at 158.

16

For these reasons, we conclude that the requested Commonwealth employees' counties of residence information is protected by the constitutional right of informational privacy and this right is not outweighed by the public's interest in dissemination in this case. Consequently, OOR erred in ordering the disclosure of Commonwealth employees' counties of residence under the RTKL.

*GOA*, 202 A.3d at 896.

Applied to the instant request for the redacted applicants' and/or licensees' home addresses herein, we conclude that OOR erred in applying the *PSEA* balancing test and concluding that disclosure of all of this information is required.[15]

---

[15] Requester's reliance on our opinion in *Butler School District v. Pennsylvanians for Union Reform*, 172 A.3d 1173 (Pa. Cmwlth. 2017), in this regard is misplaced as we specifically recognized the distinction between a request for an individual's home address and the information that was sought therein. As this Court explained:

A home address is a type of information that may be considered a personal matter. In sharp contrast, the Property List [requested in this case] is a record of owners of taxable real property that has been assessed to generate revenue for the government. A property address contained in the Property List correlates to a taxable property, not necessarily to a person's home. Even the mailing address a property owner provides to a taxing authority is not necessarily a home address. Thus, an address contained in the Property List is not necessarily a personal identifier like a personal telephone number or Social Security number[.]

Cognizant of the material differences in the information at issue, we do not equate home addresses of specified individuals to addresses contained in the Property List, that correspond to properties taxed regardless of who lives there. Accordingly, we consider a request for the Property List based on its content and the nature of the record.

*Id.* at 1181 (citations omitted).

17

However, the mere fact that the instant applicants and/or licensees provided this information to the PLCB in order to obtain a license or its renewal does not, *ipso facto*, act as a complete waiver of their constitutional right to privacy in all of this information.[16] As this Court has explained:

> The law is well settled that "[c]onstitutional rights can be waived." However, "[w]e are unaware of any constitutional right that can be waived by operation of a rule of procedure that does not explicitly provide for the waiver." Rather, "any [such] waiver must be knowing, intelligent and voluntary." "[I]n order for the waiver to be voluntary, it must be 'an intentional relinquishment or abandonment of a known right.'" A waiver is knowing and intelligent if the right holder is aware of both the nature of the right and the risk of forfeiting it.

*Chester Housing Authority v. Polaha*, 173 A.3d 1240, 1250-51 (Pa. Cmwlth. 2017) (citations omitted). There is no record evidence herein that any of the forms or information disseminated by the PLCB to the applicants and/or licensees in this matter explained that they were voluntarily relinquishing their constitutionally protected right in all personal residential information by submitting such information to the PLCB pursuant to the PLCB's requirements.

Ensuring that the PLCB acts in conformity with the requirements of the Liquor Code in regulating the distribution of alcohol in the Commonwealth is unquestionably a laudable public goal. *See PSEA*, 148 A.3d at 158 ("While the goal of the legislature to make more, rather than less, information available to public

---

[16] Again, Requester's reliance on our opinion in *Butler School District* in this regard is also misplaced. *See* n.15, *supra*. Likewise, Requester's reliance on the Supreme Court's opinion in *The Pennsylvania State University v. State Employees' Retirement Board*, 935 A.2d 530 (Pa. 2007) in this regard is equally misplaced. *See id.* at 539 ("With regard to the right to privacy in one's social security number, telephone number or home address, we would have greater difficulty concluding that the public interest asserted here outweighs those basic rights to privacy. Such is not the scenario presently before the Court, however. The requests for disclosure in this matter specifically excluded such personal information.").

scrutiny [under the RTKL] is laudable, the constitutional rights of the citizens of this Commonwealth to be left alone remains a significant countervailing force."). However, it is presumed that the PLCB acts lawfully and in good faith in performing its statutory duties. *See, e.g.*, *In re Redevelopment Authority of the City of Philadelphia*, 938 A.2d 341, 345 (Pa. 2007) ("'Public officials are presumed to have acted lawfully and in good faith until facts showing the contrary are averred, or in a proper case are averred and proved.'") (citations omitted).

Moreover, in the absence of any other purported public purpose in the compelled disclosure of this personal information, the generic purpose asserted by Requester herein is outweighed by the applicants' and/or licensees' well-recognized and constitutionally mandated right of informational privacy to their personally identifiable street address information. *See Mission Pennsylvania, LLC*. There has been no demonstration that there is no less intrusive alternative means to accomplish this purported public benefit. *Chester Housing Authority*, 173 A.3d at 1247; *Denoncourt*, 470 A.2d at 949.

As asserted by the PLCB, if it is suspected that an applicant and/or licensee is not a Pennsylvania resident as required by the Liquor Code, a protest or petition to intervene may be filed under Section 413(b) of the Liquor Code, 47 P.S.

§4-431(b), or Sections 17.11[17] or 17.12 of the PLCB's regulations.[18] Further, if a Liquor Code violation is suspected, a complaint may be filed with the Pennsylvania

---

[17] 40 Pa. Code §17.11. Specifically, Section 17.11(a) and (b) provides:

(a) *When location is at issue.* When an application has been filed for a new retail liquor license, retail malt or brewed beverage license, importing distributor or distributor license, or the transfer of these licenses to a premises not then licensed, or for the extension of premises of these licenses, a protest may be filed with the Board by the following:

(1) A licensee whose licensed premises is located within 200 feet of the premises proposed to be licensed.

(2) A church, hospital, charitable institution, school or public playground located within 300 feet of the premises proposed to be licensed.

(3) A resident of the neighborhood within a radius of 500 feet of the premises proposed to be licensed.

(b) *When qualifications of an applicant are at issue.* A protest may be filed with the Board by a person having information regarding the qualifications of an applicant for a new retail liquor license, retail malt or brewed beverage license, importing distributor or distributor license, or for the transfer of these licenses to another person or when a corporation or club, as required by Chapter 5 Subchapter G (relating to change of officers of corporations and clubs) submits a change of officers, directors or stockholders.

40 Pa. Code §17.11(a), (b).

[18] 40 Pa. Code §17.12. Section 17.12(a) states

A person who can demonstrate a direct interest in an application for a new retail liquor license, retail malt or brewed beverage license, importing distributor or distributor license, or the transfer of these licenses, whether person-to-person, place-to-place, or both, or an extension of premises of these licenses, and who can further

20

State Police, Bureau of Liquor Control Enforcement, under Sections 211[19] and 471 of the Liquor Code.[20] OOR failed to examine these other less intrusive means in

demonstrate that a Board decision contrary to the person's direct interest will cause the person to be aggrieved may file a petition to intervene.

40 Pa. Code §17.12(a).

[19] 47 P.S. §2-211. Section 211(a)(4) states:

(a) There is created within the Pennsylvania State Police a Bureau of Liquor Control Enforcement which shall be responsible for enforcing this act and any regulations promulgated pursuant thereto. Officers and investigators assigned to the bureau shall have the power and their duty shall be:

* * *

(4) To investigate and issue citations for any violations of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or any regulations of the [PLCB] adopted to such laws or any violation of the laws of this Commonwealth or of the Federal Government, relating to the payment of taxes on liquor, alcohol or malt or brewed beverages by any licensee, his officers, servants, agents or employes.

47 P.S. §2-211(a)(4).

[20] 47 P.S. §4-471. Section 471(a) states, in relevant part:

(a) Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the [PLCB] adopted pursuant to such laws, or any violation of any laws of this Commonwealth or of the Federal Government relating to the payment of taxes on liquor, alcohol or malt or brewed beverages by any licensee within the scope of this article, his officers, servants, agents or employes, or upon any other sufficient cause shown, the enforcement bureau may, within one year from the date of such violation or cause appearing,

directing the PLCB to disclose the complete unredacted records in this case. Nevertheless, as noted by OOR, "Because [the PLCB] has not demonstrated how the privacy interests in [the length of residency] outweighs the public's interest in ensuring that the applicants meet the residency requirements under the Liquor Code, the length of time the respective applicants were residents of Pennsylvania is subject to public access." R.R. at 160a.

In sum, the disclosure of the city, state, and zip code of the applicants' and/or licensees' residential addresses, and the years of residency, are the least intrusive means of vindicating the asserted public interest in ensuring an applicant's and/or licensee's fitness for a license under the relevant provisions of the Liquor Code. In balancing the constitutionally protected privacy interests of the applicants and/or licensees in their personally identifiable street address information against the public's interest in assuring the PLCB's statutory compliance for the issuance of a license or its renewal pursuant to *Reese* and *PSEA*, the PLCB properly redacted the applicants' and/or licensees' street address information from the instant records. *Mission Pennsylvania, LLC*. Accordingly, OOR's Final Determination is reversed to the extent that it compels the PLCB to disclose the redacted street address information of the applicants and/or licensees. *Id.*; *GOA*.

**II.**

cite such licensee to appear before an administrative law judge [by] sending such licensee, by registered mail, a notice addressed to him at his licensed premises, to show cause why such license should not be suspended or revoked or a fine imposed, or both. The bureau shall also send a copy of the hearing notice to the municipality in which the premises is located.

47 P.S. §4-471(a).

22

The PLCB next claims that OOR erred in determining that Requester's initial request for the entire application forms necessarily included a request for the applicants' and/or licensees' complete home addresses and length of residency information contained therein. The PLCB contends that the first time that Requester expressed an interest in obtaining the home addresses and length of residency was after he filed an appeal of the PLCB's Final Response to the request. On its face, the original request did not seek this information and OOR effectively permitted Requester to refashion his original request to obtain this information. The PLCB submits that "[n]owhere in the RTKL process has the General Assembly provided that OOR can refashion the request." *Pennsylvania State Police v. Office of Open Records*, 995 A.2d 515, 516 (Pa. Cmwlth. 2010). OOR also improperly allowed Requester to modify his original request on appeal by asking him to articulate the public benefit supporting disclosure of the home addresses and length of residency, *see* R.R. at 85a-86a, which goes beyond a simple clarification of the original request and fundamentally modified the scope of that request. The PLCB asserts that OOR should require requesters to articulate the public benefit in the initial request to assist the agencies in conducting the constitutional balancing test as required by *Reese*.[21]

However, as noted by Requester, the request herein asked for "the names of all individuals, officers, and managers associated with" the enumerated licenses, "the dates of original application and, if applicable renewal, for each, as

---

[21] The PLCB's position in this regard is somewhat disingenuous. It must be noted that, in this case, the PLCB did not conduct the constitutional balancing test in its Final Response in this case that was issued post-*PSEA*; rather, it granted the instant request in part, and denied it in part, based on exemptions in the RTKL. *See* R.R. at 5a-6a. As also noted above, pursuant to Section 708(a)(1) of the RTKL, the burden of proving that the requested record was exempt from access by Requester was on the PLCB by a preponderance of the evidence.

23

well as copies of each such application and renewal request . . . ." R.R. at 1a-2a. As determined by OOR herein:

> Here, the Requester did not modify the Request on appeal. While the Request does not specifically mention home addresses, it seeks copies of certain liquor license applications and permit renewal requests. As acknowledged by the [PLCB], the applications and permit renewal requests contain the home addresses of the applicants. Thus, by implication, the Request seeks the information contained in the applications and permit renewal requests, including the home addresses. Moreover, the [PLCB] does not present any evidence suggesting that the Requester indicated in the Request that he does not seek the home addresses, or that the Requester waived his right to challenge the redactions of the home addresses on appeal.

R.R. at 153a. We discern no error in OOR's determination in this regard.

The PLCB improperly asserts that the first part of the request somehow limits the second part in arguing that Requester improperly expanded the request by seeking this information. Under the PLCB's reasoning, a requester would need to know in advance what information is contained in the requested record to specify what information is sought in the request. Section 703 of the RTKL provides: "A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested . . . ." 65 P.S. §67.703. In this case, Requester specifically requested the entire application which contains the information at issue. In sum, OOR did not improperly permit Requester to expand his request, and properly concluded that the initial request sought all of the information contained on the applications and/or permit renewals including the applicants' and/or licensees' complete home addresses and length of residency information contained therein.

24

## III.

Finally, in his cross-appeal, Requester claims that OOR erred in determining that the IFDAs are exempt from disclosure under the noncriminal investigation exemption in Section 708(b)(17)(ii) of the RTKL. Requester contends that under *Department of Health v. Office of Open Records*, 4 A.3d 803, 810-11 (Pa. Cmwlth. 2009), to be exempt under Section 708(b)(17), there must have been a systematic or searching inquiry, a detailed examination, or an official probe and that such an investigation must go beyond the "routine performance of [the] duties" of the agency under *Sherry v. Radnor Township School District*, 20 A.3d 515, 523 (Pa. Cmwlth. 2011). By including the IFDAs in its initial response to the request, the PLCB implicitly acknowledged that they are considered part of the application for a license. In fact, Section 3.6 of the PLCB's regulations state, "An applicant . . . shall report financial arrangements related to the purchase of the license and business . . . on forms provided by [PLCB]." 40 Pa. Code §3.6. Thus, the PLCB requires an IFDA of every applicant as a routine matter whether the applicant is actually investigated, and the Bureau Director's affidavit acknowledges that the Bureau "frequently conducts investigations" and that "[t]hese investigations are necessary, in most cases . . . ." *See* Director Peifer Affidavit ¶9, R.R. at 48a-49a. Requester contends that under the PLCB's logic, the entirety of the license application would be exempt under Section 708(b)(17)(ii).

However, OOR concluded that the IFDAs are exempt under Section 708(b)(17)(ii) based on the affidavit of Bureau Director Peifer. In the affidavit, Peifer explains, in significant detail, the scope of the Bureau investigations relating to applications for liquor licenses and/or permits. *See* Director Peifer Affidavit ¶¶4-

25

6, 9-11, 15-16, R.R. at 48a-50a. She also indicated that the IFDA is collected during the investigation and the information collected thereby is used to determine whether there are any prohibited interlocking business interests under Sections 411 or 443 of the Liquor Code, or unlawful pecuniary interests under section 404 of the Liquor Code, and that such information is considered confidential. R.R. at 50a.

In rejecting Requester's claim in this regard, OOR stated the following, in relevant part:

> Under the RTKL, a sworn affidavit is competent evidence to sustain an agency's burden of proof. *See Sherry*[, 20 A.3d at 520-21]; *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. [Cmwlth.] 2010). In the absence of any competent evidence that the [PLCB] acted in bad faith, "the averments in [the affidavit] should be accepted as true." *McGowan v. Pa. Dep't of Envtl. Prot*, 103 A.3d 374, 382-83 (Pa. [Cmwlth.] 2014) (citing *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. [Cmwlth.] 2013)).

> Based on the evidence presented, the [PLCB] has proven that it conducted noncriminal investigations pursuant to its legislatively granted fact-finding powers to determine whether the respective applicants meet the requirements of the Liquor Code and the [PLCB]'s regulations, and that the responsive "Individual Financial Disclosure Affidavits" relate to those noncriminal investigations. *See* 65 P.S. §67.708(a)(1)[.]

R.R. at 162a-163a.

Based on the foregoing, it is clear that OOR did not err in determining that the IFDAs are exempt from disclosure under Section 708(b)(17)(ii) of the RTKL.[22] The information on the forms is collected to document the "financial

---

[22] The passing reference to the "routine performance of its duties" in *Sherry*, 20 A.3d at 523, does not take the requested IFDAs outside of this exemption. As we noted in that case,

arrangements related to the purchase of the license and business and items incidental thereto" under Section 3.6 of the PLCB's regulations, and to ensure compliance with Sections 404, 411, and 443 of the Liquor Code.

As we explained in *Department of Health*:

> Here, the Inspections performed by the Department involve: visiting and inspecting the building, grounds, equipment and supplies of a nursing home; reviewing records of the nursing home and patients; and observing and interviewing patients and staff of the nursing home. [Section 813 of the Act of July 19, 1979, P.L. 130, *as amended*, added by the Act of July 12, P.L. 655,] 35 P.S. §448.813. Moreover, these activities are conducted in order to assess a nursing home's compliance with statutory and regulatory provisions and determine if any corrective and/or disciplinary action needs to be taken. *See* [Sections 811 through 814 and 817,] 35 P.S. §§448.811–448.814, 448.817. Similarly, the Surveys performed by the Department involve a team of Surveyors who: examine medical records of residents; interview residents, staff, and family members; and make observations of a facility, which include observing medication preparation and administration and dining area and eating assistance practices. 42 C.F.R. §488.110. These activities are conducted in order to assess whether a nursing home is providing the quality of care mandated by law. *Id.* Thus, in conducting the Inspections and Surveys, the

---

"[a]gencies are creatures of statute and, thus, only have the authority to act pursuant to their official duties as established by their enabling legislation. As such, in order for an agency to conduct any type of investigation, the investigation would necessarily be a part of the agency's official duties." *Id.* at 522 quoting *Department of Health*, 4 A.3d at 814. The records requested in *Sherry* were "forms upon which violations are noted and contain a description of the violative conduct, witness/teacher statements, and the course and result of the investigation." *Id.* at 524. Likewise, the IFDAs sought herein are the result of a noncriminal investigation with respect to an applicants' and/or licensees' statutory or regulatory fitness for a license or renewal. The mere fact that the PLCB routinely conducts these investigations to ensure compliance with the statutory and regulatory requirements as part of its official duties does not take the IFDAs outside the realm of this statutory exemption.

27

> Department is making a systematic and searching inquiry, a detailed examination, and an official probe with regard to a nursing home's operations and whether such operations are in compliance with the Social Security Act,[23] the [Health Care Facilities Act[24]], and the applicable state and federal regulations.

*Id.* at 811. Likewise, in the instant matter, absent any allegation of fraud or wrongdoing, there is no reasonable justification for the public release of the information contained in the IFDAs because they are the result of "a systematic and searching inquiry, a detailed examination, and an official probe" into the fitness of an applicant and/or licensee under the relevant provisions of the Liquor Code and the PLCB's regulations.

## IV.

Accordingly, OOR's Final Determination is reversed to the extent that it compels the PLCB to provide Requester with the previously redacted information relating to applicants' street addresses; the Final Determination is affirmed in all other respects.

MICHAEL H. WOJCIK, Judge

---

[23] 42 U.S.C. §§301–1397mm.

[24] Act of July 19, 1979, P.L. 130, *as amended*, added by Section 7 of the Act of July 12, 1980, P.L. 655, 35 P.S. §§448.101–448.904b.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control
Board,                                          :
                                                :
                                                :
                          Petitioner            :
                                                :
                v.                              : No. 91 C.D. 2018
                                                :
Lazlo Beh,                                      :
                                                :
                          Respondent            :


Lazlo Beh, for                                  :
Philadelphia Legal Assistance,                  :
                                                :
                          Petitioner            :
                                                :
                v.                              : No. 153 C.D. 2018
                                                :
Pennsylvania Liquor Control Board,              :
                                                :
                          Respondent            :

## **O R D E R**

AND NOW, this 17th day of July, 2019, the Final Determination of the Office of Open Records (OOR) is REVERSED to the extent that it compels the Pennsylvania Liquor Control Board to provide Lazlo Beh with the previously redacted information relating to the street addresses on the relevant liquor licenses and/or renewal applications. OOR's Final Determination is AFFIRMED in all other respects.

_____
MICHAEL H. WOJCIK, Judge